We'll take up United States v. Chico. Good morning and may it please the court, excuse me, Edward Horowitz appearing for the three minutes of my time for rebuttal. What bothers me about this case and what happened here, which was not the fault of counsel on either side, what happened basically undermines the judicial system's view of what a jury trial requires. We shouldn't countenance what happened here. And it further bothers me on looking back at the briefs that some 30 years ago, this Court in U.S. v. Harris advised the same district judge in reversing a judgment that he had stepped over the line in questioning witnesses in the same fashion that he did here. And that has two bearings on this case, one, first of all, on the standards of review, and secondly, which I'll get to on the merits of the issue here. In Harris, the Court said, and I quote, the trial court may properly participate in the examination of witnesses for the purpose of clarifying the evidence. We say that there's de novo review here or the de novo standard that should find that the district judge committed legal error because his questioning of Ms. Chico at the very end of the case, the last witness and the last questions addressed to her, were not for the purpose of clarifying the evidence. She had already admitted on cross-examination the very facts of the judge. Just a minute, let me ask you a question. I'm understanding that the standard that I'm looking at here, and I'm not necessarily an advocate of asking questions as a district judge, but as I understand the standard applied to me, if I ask one is, if by my questioning the witness, the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality? Yes, that is one of the standards. Isn't that the standard? Don't I have to determine that this particular questioning shows actual bias or leaves the impression that the jury perceived an appearance of advocacy or partiality? Yes, and I will address that. But again, as this Court stated in Harris, that the questioning to begin with must deal with clarifying the evidence. And that's the question here, the questioning here amounted to cross-examination of the witness to a slightly greater extent than had occurred on cross-examination by the government, in which she freely admitted the misrepresentation of fact in the resume that apparently she had submitted to the government. Counsel, this is Judge Rawlinson. I have a question. Yes, ma'am. I thought the original question was whether or not she had graduated from the university, and then the judge clarified whether she had ever attended that university. Now, why would that be violative of the judge's obligation? Well, I think the ‑‑ I think it may be a distinction with very little difference. She had on her resume that she had a degree from this university, which she admitted she did not, that she had never gone there. And I don't think ‑‑ No, she admitted that she didn't have the degree. Right. Then he asked, did you ever attend the university? That's two different things. One can attend a university without getting the degree from that university, but then he clarified whether she ever even went to that university. Well, I think it's ‑‑ I would just have to say that I don't believe the effect of the distinction that Your Honor's making should have any bearing on whether he should have been asking the questions to begin with. Keep in mind that during his examination of Ms. Chico, he asked that the resume be displayed again on the viewer that the jury could look at, and whether he specifically said, and I think I quoted in the brief, I don't remember the exact words, but even assuming he made that distinction. It's really a distinction for purposes of the effect, as Judge Smith mentioned, the effect on the jury, did they perceive some aspect of advocacy on the district judge's part, keeping in mind that this Court stated to this judge 30‑some years ago, a trial court must be ever mindful of the sensitive role it plays in a jury trial and avoid even the appearance of advocacy or partiality. Okay, so if you're going to go with advocacy and partiality, what are you going to do with these timely curative instructions? This judge right off the bat in pre-instruction says, I might occasionally ask a couple of questions in order to bring out facts which may not be covered. You're not to consider my questioning as any indication about what I think. And then at the end, he says, well, I may have asked some questions, but I'm cautioning you again, no question of mine should give any idea about that. Don't the curative instructions help this particular situation that I've got to look at? No. And the reasons are, there are multiple reasons. First of all, the case was about credibility. Counsel on both sides and the judge agreed the case was about credibility. Now we're talking about timing of the questioning of his examination of the witness. And he waited until all of the other witnesses testified. There were 13 or 14 other witnesses. He had asked one innocuous question to clarify records that one accountant had looked at, one question during the course of the entire trial up to that point. Then after direct examination and cross-examination and redirect examination of Ms. Chico in her defense, he then asked a series of questions about what was on her resume and the misstatement. Call it a falsehood, whatever you wish. The fact is he brings out one fact that has to do with her credibility, in which she admitted that she had made a misstatement or a falsification on her resume. The last thing the jury heard from the court or the witness stand regarding credibility was the affirmation that she had made that misrepresentation. The jury then heard argument. They went off and deliberated. And, yes, there was an instruction. He had said way back at the beginning in the context of also stating in the same sentence that he would only ask questions to clarify facts. He said, but, you know, on questions I ask, you know, it's up to you to decide. And he repeated that, yes, it was part of the regular instructions, but it's a very different case. And it's a very different case in the U.S. v. Harris case, because it would have been the proper instruction to give at that time. Kennedy, did you find anything in the transcript about that in Harris? I looked at Harris to try to discern. No, I don't recall from reading. I would assume. I don't recall it either. I would assume, I would assume if he did it, if he did it, you know, now, he would have done it then. I think we have a presumption that the judge would have instructed the jury on applicable legal principles. Harris, how long ago? I think it was 1974 or 1975. In those days, judges weren't so anxious to get involved, nor were they anxious about the jury notes like they are now, which is another of your situations. It may be true, but the rule is the rule where it says that when the participation of the judge is designed to elicit answers favorable to the government, it's far better for the trial court to err on the side of abstention from intervention, and particularly where, as Judge Rawlinson mentioned, he's bringing out a possible very tiny distinction between did you graduate or did you attend in a case where simultaneously he is reaffirming the fact that she was not a credible person and the fact she had already admitted with regard to her resume. And, again, we have to look at this point. I think it follows from this that was there prejudice from this? The instruction that he gave, the curative instruction, is a factor to consider. But, again, I say it was propuncty instruction, and the jury, if the last thing they that and brought to mind the fact that she might not be a credible defendant who had testified credibly, reasonably, rebutting each and every one of the five areas, the five claims that the government had listed, the incomes she should have put on her 2000 and 2001 tax returns, she gave a credible answer to all of those. And if the jury had believed her testimony, or even if it had raised a reasonable doubt, they would have had to acquit because of the willfulness requirement with regard to the two counts against her. She had to willfully not report income on her returns. Additionally, as far as prejudice goes, she had a co-defendant, Ms. Tolentino, who had been her domestic partner, lesbian lover, whatever, and who, Ms. Chico testified, was the one who managed their joint bank accounts. And remember, the checks that were written and deposited supposedly and not reported as income were handled by Ms. Tolentino, the co-defendant, who had pled guilty to one count beforehand, and not by Ms. Chico, who was busy handling the business that she was running. There was no rebuttal to this. They did not call Ms. Tolentino as a witness. They rebutted. She could have, presumably, but they didn't. Instead, they called her son, who gave testimony, however restricted, by the trial judge. And we discussed that with regard to whether he made a proper ruling as to Thursday and so forth. But even with that, the son's testimony was equivocal and in many respects corroborated much of what Ms. Chico had testified to. For example, she testified that the endorsements on the checks that were supposedly wrongfully deposited into the joint personal account, and the name was Chico, but the handwriting, she testified, was Tolentino's. The son said, well, I don't know. Well, don't you recognize your mother's handwriting? Well, yeah, but this and that and so forth. And he finally ultimately said, I really can't say whose handwriting that is. Moreover, he had a motive to try to protect his mother's interests here, because her mother, although she had pled guilty, had not yet been sentenced. So he would have a motive to try to help her out with the sentencing and acknowledge that since these – some of these major checks were supposedly loans to him, that he existed – didn't have a job, he was in school – he existed in part on loans from his mother. He didn't say loans from Ms. Chico. He said loans from his mother. And so there was corroboration in that respect. And the – Ms. Lewis, did you want to save – I'm sorry. Did you want to save three minutes? Yes, I can see I'm under that. Now, I will save the rest of my time. All right. Thank you. Good morning. May it please the Court. I'm Evan Davis, and I represent the United States. First, as to the Court's questioning, it was nonleading, neutral, and not biased toward the government. In fact, it undermined the government's argument about Ms. Chico's level of sophistication. As the questions immediately following the government's questioning Ms. Chico on the resume show, the government was actually assuming that Ms. Chico had the business degree. And the following questions show that the government was saying, you're a successful businesswoman, you understand financial statements, you understand tax laws. Her defense primarily was, I'm not sophisticated enough to really understand financial statements, I've never read them. So the lack of a business degree actually hurt the government's argument. Right, but you brought that out already. I mean, that she didn't have that degree was already brought out. The fact that she didn't have the degree was already brought out. The fact that she'd never taken any business courses had not been. Well, he didn't ask that question. He didn't ask whether she'd ever taken any business courses. He returned to a place where he knew that was likely to be favorable to the government. How do we know? Like this, where he does do that, and he knows he's not supposed to be doing that. Where it comes out in this case, I think we have to weigh many things. But he did, in fact, do it, and he did it again. This is Judge Wallace, and I have a question. Or is there in the record evidence that anyone would have known that she never attended this university? Is that evidence in the record? No. Other than the resume, there was no reference to her attending the university at all. So in response to the other question, frankly, I don't know whether anyone sitting there knew whether she'd gone to that university or not, other than obviously the defendant. Perhaps the judge was doing what the Court has suggested, trying to bring out an issue to help the government.  But I think the question is, if she attended, and she did attend, it was certainly by no means guaranteed that the question would have elicited that testimony. No, but what was the downside? So she attended. It doesn't affect your theory about business sophistication. There was only – I mean, it could only hurt. It really wouldn't have helped the defendant. But be that where there's other parts of that test. I'm just pointing out that he wasn't trying to help the defendant. Certainly. And in terms of other parts of the test, you look at the number of questions asked. The Kennedy case that we cited talks about the percentage of pages of the transcript that were devoted to the court's questioning. This is the only – admittedly, it was the defendant, but it was the only witness for the defense that the judge questioned on. It was only one topic. And it was not central, the government would argue. Let me ask you a question. Let me turn to an issue which hasn't been talked about yet, and that is the sentencing. Tell me why that I should think that a district judge should, after all of the dicta or absolute holding from this court, that says you come up with a particular guideline sentence, and then after you come up with that, you've got to say 3553A factors. How do I get through to the point where he can say summarily, Chico is hereby committed, sentence is imposed, that's it? How does that meet the guidelines? Not the guidelines that are the guidelines there, but the idea that there are 3553A factors you ought to talk to us about, Judge, so we know what the heck you're talking about. You're absolutely right. The failure to mention any non-guidelines reason for imposing the sentence was an error that was plain. The question is, given the fact that the defendant did not raise – did not ask the court to further explain the court's sentence. Has he got to under our case law? Well, it doesn't have to, but the result is it's a plain error review. The question is whether it affects the interest of justice and whether it manifests justice. The last two prongs of the plain error is really what you're talking about, because it was error under Cardi's. Correct. And now question, and it's another error that this particular district court judge repeats. And we agree, again, that it's error in plain. The question is under Wachning, which is, of course, the same district court, this court said that it was a close question of whether the third prong, whether there was a substantial probability that the sentence would have been any different, whether that prong had been shown. And in Wachning, the court was focused on two errors at that part of the analysis. The first error was the failure to announce the guideline level, which is the starting point of the analysis. And the second error, which admittedly would be more important and is the same one as shared here, was what are the other non-guideline reasons? Wachning also involved, of course, the failure to allow the government to speak before sentencing, which in that case was obviously more important than here. However, the government did speak before sentencing here. So this case is not as bad as Wachning. Wachning was a close question on whether the third prong had been met. So the question is, is the failure in these circumstances, where the court basically split the difference between the government's 21-month recommendation and the defendant's 12-month home detention recommendation, is this a case under the plain error standard where the third prong has been met, and the fourth prong also in this case is a little less bad than Wachning? There was no agreed recommendation in this case of 108 months, as in Wachning in the court sentence, and additional 13 months without saying, here's the reason why I'm rejecting the party's recommendation. Yeah, but what I'm concerned about is there was some reference in the PSR to whether she was an illegal alien or not, and that wasn't really determined to any degree of finality. And he may very well have taken into consideration things that were inappropriate under 553. And we don't know, and we can't review that. I — the government certainly agrees that there's a paucity of information on which the court should review. But the question, however, comes back in the plain error analysis. But we can't say, would we have sentenced her to 15 to 21 months or whatever it was. There's also the concern that, you know, he might impose a harsher sentence, although then I suppose it would be an appeal from that that it was vindictive sentencing. But we just don't know. Is the fact that the pre-sentence investigation report, the fact that the judge sat through the trial, the pre-sentence investigation report went through these factors, and the court had sentencing memorandums, does that get us through the problem? In a very close call, the government suggests yes. Again, comparing the case to Wachmean, which was a close question on whether there was a substantial probability that the sentence would have been different. The atmospherics of this case are just simply not as bad. Not that the atmospherics are good. They're just not as bad. I mean, there's clear requirements in the party, and nowhere have we ever said in any precedent that just the fact that all these materials were available to the court means that he doesn't have to satisfy the requirement of even – I mean, it's such a bare requirement, and all he has to do is mention it, that it's there. And, I mean, in every case, it would be tantamount to saying that he doesn't even have to mention 3553A, which the Supreme Court has said he has to, the district court has to, if we could just say he could rely on all the papers that are before him, because all those papers come in in every case. If the papers were the only basis. And the court sits through the trial in 90 percent of the cases. So it would be – that would be a given. We wouldn't need the Supreme Court to have said that you need to consider the 3553A factors and at least reference them. And to some degree, of course, the court doesn't have to check off all of the 3553 factors. No, it doesn't. It's a sliding scale, and obviously if the parties had suggested an 18-month sentence and the court imposed it, then it wouldn't have been something that I think this Court would have entertained as any sort of plain error or at least violating the plain error standard. Obviously, there were competing arguments. The government's position is the defendant's arguments weren't great, but the court certainly should have addressed them. The reason, of course, for the plain error standard is the defense counsel did speak up after the sentence, chose for whatever reason not to ask the court why – what additional bases does the court have for imposing those. So that's – there's also obviously a check on the system by requiring defense counsel in order to get a good standard of review to ask the further question and allow the court to come up with the additional factors that the court had considered. I recognize the Court's ongoing concern with the fact that this is the same district court in Wachneen, but obviously the plain error standard makes it a difficult case, as it was in Wachneen. Actually, when I first started out on the district court – and I hate telling personal stories, but I didn't really know much about criminal law, and it was the AUSA who would always bring up these things to make sure that I didn't commit  I found that very helpful, to be honest. And we're aware of it – well, I want to get into another case, but we're aware of it and we try. It may be a little bit difficult, and this is the thing that's the most difficult, is that I've heard in other cases that maybe the reason the ASUSA doesn't say anything in Judge Real's court is the same reason that the defense attorney didn't say anything in Judge Real's court in this particular situation. And that's why it's a little tough on plain error review, isn't it? The illusion is that it's perhaps a little more difficult to voice concerns in that court. I will say to the defense counsel's credit that the trial counsel was not afraid of Judge Real. And that's tough to say. You're going way out on that. With that, I mean, obviously there are other issues that we've addressed. If the Court has any other questions on those issues, we'll certainly answer them otherwise. Thank you. Very quickly, if I may. On the point of the sentencing, defense counsel was basically unable to say anything with regard to the judge's failure to state the reasons, as he was otherwise required, because in the next breath after imposing the sentence, the judge ordered that she be taken into custody, and she was being taken out of the courtroom. And defense counsel raised the question whether she should at least be free until a future surrender date. And the Court granted that, and that was the end of the matter. We wouldn't even be having this discussion if the district judge had simply complied with the rules. It's not we're not asking for much. We're just asking for a quick statement of some reasons for the sentence to impose some indication that he's actually considered the matter. Back very quickly to the point about the distinction between did you have a degree or did you attend. The questions, regardless of any distinction, still have to be in a neutral state and in a neutral fashion, as opposed to being in a sense of advocacy, which clearly in my mind, these were not neutral questions. Secondly, the degree claimed was a bachelor of science in business administration from a college in the Philippines. To the extent it may have been relevant that she at least attended classes there, this had no clarification on whether she was knowledgeable with tax laws and there was no explanation why what the judge was clarifying. All it did in reality was simply state that the judge did not think she was a credible person and that that was the last thing the jury heard before they went off to deliberate. And I submit that the system just did not countenance that kind of questioning in light of the cases, including Harris, at that point in time under the circumstances of the case that revolved, everyone agreed, that revolved around credibility. And I think that Ms. Chico is entitled to a new trial where her credibility can be assessed by a jury in the fashion that it ought to be, unless there are any questions that would submit the matter. Thank you very much. United States. This is Chico is submitted. And we'll be in recess for about five minutes and then we'll come back and hear the last two cases on the docket. Thank you.
judges: Wardlaw, Rawlinson, Smith N. R.